```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

JOSE HENRY LOPEZ CANAS,

                     Petitioner,

    -vs-

MATTHEW G. WHITAKER, in his official
capacity as Attorney General, U.S.
Department of Justice; KIRSTJEN M.
NIELSEN, in her official capacity as
Secretary, U.S. Department of
Homeland Security; JEFFREY SEARLS,
in his official capacity as Facility
Director, Buffalo Federal Detention
Facility; THOMAS E. FEELEY, in his
official capacity as Field Office
Director, Buffalo Field Office, U.S.
Immigration & Customs Enforcement,

                     Respondents.

**No. 6:19-cv-06031-MAT**
**DECISION AND ORDER**

## I. Introduction

Represented by counsel, Jose Henry Lopez Canas ("Lopez Canas" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against respondents Matthew G. Whitaker, Kirstjen M. Nielsen, Jeffrey Searls, and Thomas E. Feeley (hereinafter, "the Government" or "Respondent") challenging his continued detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS").[1]

---

[1] The Clerk of Court is directed update the case caption pursuant to Rule 25(d) of the Federal Rules of Civil Procedure so as to reflect that William P. Barr has assumed the role of United States Attorney General, replacing Acting Attorney General Matthew Whitaker. In addition, the caption should be amended to reflect that the proper spelling of defendant Searls' first name is Jeffrey, not Jeffery.

For the reasons discussed below, the request for a writ of habeas corpus is denied, and the Petition (Docket No. 1) is dismissed.

## II. Factual Background

The following factual summary is based on the Declaration of Joseph H. Marchewka (Docket No. 4-1), the Exhibit (Docket No. 4-2) attached thereto, the Continuation of Exhibits (Docket No. 6-1), and the Declaration of Daniel Moar, Esq. (Docket No. 6-2).

Petitioner, a citizen of El Salvador, was detained by the Department of Homeland Security ("DHS") while crossing the southern border of the United States on September 28, 2004, and immediately placed into removal proceedings. The Notice to Appear charged him with being subject to removal from the United States, pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(i). After being released from DHS custody on his own recognizance, Petitioner absconded and was ordered removed *in absentia* by an Immigration Judge ("IJ") on November 16, 2004. However, Petitioner did not report for removal on January 7, 2005. He was arrested on December 12, 2008, in Suffolk County, New York, for petit larceny, and placed in DHS custody pursuant to the outstanding removal order.

Petitioner was removed to El Salvador on January 20, 2009, but illegally reentered the United States on or about February 20, 2009. Most recently, Petitioner came into DHS custody on March 17, 2018, after being detained by border authorities while attempting

to enter Canada. Because Petitioner expressed a reasonable fear of removal to El Salvador, his case was referred to U.S. Citizenship and Immigration Services ("USCIS"). On April 16, 2018, USCIS concluded that Petitioner had established reasonable fear, and he was served with a Notice of Referral to Immigration Judge for "withholding only" proceedings.

On April 18, 2018, Petitioner sought withholding of removal to El Salvador. That same date, DHS determined it was appropriate to continue Petitioner's custody because he was a flight risk.

On May 10, 2018, an IJ ordered that Petitioner's request for a change in custody status be denied, finding that Petitioner posed a flight risk. On June 25, 2018, DHS also made an individualized determination that Petitioner should remain in custody based on specific factors showing him to be a flight risk, including his previous illegal reentry to the United States after removal and his failure to obtain the Attorney General's permission to return to the United States.

On August 29, 2018, an IJ denied Petitioner's applications for relief from removal and protection under the regulations implementing the Convention Against Torture ("CAT"). His removal order was reinstated.

DHS afforded Petitioner subsequent custody reviews in September 2018 and December 2018, and continued his detention. An IJ issued a decision on November 24, 2018, denying bond to

Petitioner on the basis that he posed a flight risk. Petitioner appealed the IJ's decision denying him relief from removal to the Board of Immigration Appeals ("BIA"). The BIA dismissed Petitioner's appeal on March 4, 2019, finding that he did not establish eligibility for withholding of removal because the particular social groups asserted by Petitioner—"former bus drivers in El Salvador" and "persons deported from the U.S. to El Salvador who are perceived to have wealth or money" were not legally recognized as qualified to receive withholding of removal.

The Government indicates that DHS has Petitioner's passport and had arranged for his removal to El Salvador on March 22, 2019. However, Petitioner filed a petition for review ("PFR") and motion to stay removal with the United States Court of Appeals for the Second Circuit. *See Lopez Canas v. Barr*, 19-634 (2d Cir. Mar. 15, 2019), Docket Nos. 1 & 8. Due to the forbearance agreement between DHS and the Second Circuit, the pending stay motion precludes DHS from executing the order of removal. Accordingly, DHS cancelled the removal plans.On March 18, 2019, the Attorney General filed an opposition to the stay motion, and on May 19, 2019, moved to expedite consideration of the stay motion. *See Lopez Canas v. Barr*, 19-634 (2d Cir. Mar. 15, 2019), Docket Nos. 13 & 32.

Lopez-Canas filed the instant Petition, asserting that he continues to be unlawfully detained under 8 U.S.C. § 1226(a) "because he did not receive a full and fair hearing," and the bond

hearing that he did receive violated the INA, the Due Process Clause of the Fifth Amendment of the United States Constitution, and the Administrative Procedures Act ("APA"). Petition ("Pet.") (Docket No. 1) ¶ 33. The Petition raises three separate claims for relief: Count One asserts that his detention violates the INA; Count Two alleges that his detention violates the Due Process Clause of the Fifth Amendment; and Count Three challenges his detention under the APA. *See* Pet. ¶¶ 61-69; *see also* Pet. §§ II.A, II.B & II.C.

The Government filed an Answer and Return (Docket No. 4), Motions to Dismiss and to Strike (Docket No. 5), and a Memorandum of Law ("Respt. Mem.") (Docket No. 7). The Government argues that there is no private right of action for alleged violations of the INA, *id.* at 9; decisions regarding the place of confinement of noncitizen aliens are not subject to judicial review, *id.* at 9-10; the Court is without authority to order Canas immediately released from detention, *id.* at 11; the continued detention of Canas is lawful for numerous reasons, *id.* at 11-20; the Petition is premature because Lopez-Canas is currently detained pursuant to 8 U.S.C. § 1231, rather than 8 U.S.C. § 1226(a), *id.* at 20-23; and there is no authority under due process principles, the INA, or the APA, for requiring the Attorney General to bear the burden of proof at bond hearings, *id.* at 23-38.

Petitioner filed an Opposition to The Government's Motion to Dismiss and Motion to Strike ("Petr.'s Opp.") (Docket No. 12). Petitioner contends that to the extent any decision by the Attorney General to relocate impacts his ability to work with counsel, it would be an abuse of discretion, *id.* at 3-4; and he was never afforded a proper bond hearing because at the hearing he received, he was required to prove a negative, i.e., that he was not a danger or flight risk, *id.* at 4-8.

The Government filed a Reply (Docket No. 13) arguing, *inter alia*, that Petitioner's opposition brief fails to address The Government's arguments that (i) there is no private cause of action for violation of the INA requiring dismissal of the Count One; (ii) Petitioner is not entitled to immediate release; (iii) this action should be dismissed as premature; and (iv) Petitioner's failure to demonstrate prejudice warrants dismissal of the Petition. *See* Reply at 5 (citations to Respt. Mem. omitted). Accordingly, The Government argues, Petitioner has abandoned those claims. *See id.* The Government also submits that the cases cited by Petitioner are distinguishable or not binding authority. *See id.*

### III. Scope of Review

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678,

687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the

Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

**IV. Discussion**

    **A.    Count One: Detention in Violation of the INA**

The Government argues that Count One of the Petition fails to provide a cognizable basis for relief because there is no independent cause of action for alleged violation of the INA. *See* Respts.' MOL at 9 (citing *Jaskiewicz v. U.S. Dep't of Homeland Sec.*, No. 06CIV3770DLC, 2006 WL 3431191, at *4 (S.D.N.Y. Nov. 29, 2006)). As the Government points out, the INA "'does not itself create a cause of action or federally-protected right.'" *Sharkey v. Ganter*, No. 05 CIV. 5577 (PAC), 2006 WL 177156, at *5 (S.D.N.Y. Jan. 24, 2006) (quoting *Huli v. Way*, 393 F. Supp.2d 266, 271 (S.D.N.Y. 2005) (citing *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 443 (1987)), *rev'd and remanded sub nom. other grounds by Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008); *see also United States v. Richard Dattner Architects*, 972 F. Supp. 738, 743 (S.D.N.Y. 1997) ("The INA is a regulatory statute that establishes the

circumstances under which people may be admitted to the United States. . . . Although plaintiff may have been interviewed as part of the process necessary to obtain certification under the INA and its regulations, the statute does not create rights in his favor.") (citing *Collyard v. Washington Capitals*, 477 F. Supp. 1247, 1255 (D. Minn. 1979) ("The [INA] is merely a regulatory statute administering the immigration and naturalization of aliens. The Act does not regulate the direct relationship between domestic workers and employers.")).

Petitioner has not responded to this argument. It is well settled in the Second Circuit that a party's failure to provide argument on a point or claim at issue constitutes abandonment thereof. *See, e.g., Molinari v. Bloomberg*, 564 F.3d 587, 609 n. 15 (2d Cir. 2009) ("In short, [appellants] make no argument [in any of their appellate briefs] whatsoever regarding their claims under subdivisions (e) or (f) or New York City Charter § 38. Accordingly, such claims are deemed abandoned.") (citation omitted). Accordingly, Count One is dismissed as abandoned.

### B. Count Two: Detention in Violation of the Due Process Clause

Count Two alleges that the decisions to continue Petitioner's detention violate due process principles because the Attorney General, not the noncitizen alien, should bear the burden of proof at a bond hearing for aliens detained pursuant to 8 U.S.C. § 1226.

The Government argues that his detention is constitutional if considered under 8 U.S.C. § 1226 because, *inter alia*, he has failed to demonstrate prejudice as a result of the burden of proof applied at his bond hearings. *See* Respts.' MOL at 37-38 (citing *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (stating that "[p]arties claiming denial of due process in immigration cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process'"; dismissing due process claim by alien who admitted all of facts necessary to warrant reinstatement of prior removal order, i.e., that he was alien who had reentered the United States illegally after being previously deported, because alien was not prejudiced by administrative process adopted by agency for reinstatement of removal orders, and therefore could not successfully challenge that procedure on due process grounds) (quoting *Lattab v. Ashcroft*, 384 F.3d 8, 20 (1st Cir. 2004); citation omitted)). The Government notes Petitioner has failed to offer any argument in opposition and therefore has conceded this point.

In the alternative, The Government argues that at this juncture in his removal proceedings, Petitioner is actually detained pursuant to 8 U.S.C. § 1231. The Government contends that when Petitioner's case is considered under § 1231, he does not have a ripe *Zadvydas* due process claim. *See* Respt. Mem. at 20-23. The

Government asserts that the BIA's dismissal order on March 4, 2019, renders Petitioner subject to a final order of removal. *Id.* at 21-22 (citing *Mohammed Ferdous Hossain v. Johnson*, No. 15-CV-0122(MKB), 2015 WL 9581815, at *1, 2015 U.S. Dist. LEXIS 173213, at *3 (E.D.N.Y. Dec. 30, 2015) (alien filed an application for asylum and withholding of removal, which was denied by an IJ; deportation proceedings were commenced and alien appealed the denial to the BIA which summarily dismissed the appeal; since the date of the BIA's dismissal order, "Hossain has been subject to a final order of deportation")). Although Petitionerhas filed a PFR and a motion to stay with the Second Circuit, the "removal period" has not been delayed pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii) because such a delay only occurs where "a court orders a stay of the removal of the alien," *id.* The Government notes that pursuant to 8 U.S.C. § 1231(a), it has a 90-day period to remove noncitizens following a final order of removal, and *Zadvydas* recognized that the Government is afforded an additional 6 months as a presumptively "reasonable time" to effect removal. Respt. Mem. at 22 (citing *McGowan v. Tryon*, No. 14-CV-145-JTC, 2014 WL 2931413, at *4 (W.D.N.Y. June 27, 2014) ("[U]nder the Supreme Court's holding in *Zadvydas* . . ., petitioner's post-final-removal order detention is presumed to be reasonable for six months, thereby providing DHS with a reasonable opportunity to accomplish his removal from the United States. *See Zadvydas*, 533 U.S. at 699–700 (the court must

ask whether the detention exceeds a period reasonably necessary to secure removal). This 'presumptively reasonable' period will not expire until October 2014. Thus, the petition is premature.")). Petitioner also did not respond to this argument in his opposition brief, leading the Government to contend that Petitioner has conceded this point. *See* Reply at 3-4.

For reasons unknown to the Court, Petitioner did not respond to these arguments by The Government. It is well settled in this Circuit that "[a] plaintiff effectively concedes a defendant's arguments by his failure to respond to them." *Felske v. Hirschmann*, No. 10 CIV. 8899 RMB, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (citing *Rosenblatt v. City of N.Y.*, No. 05 Civ, 5521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007); *Abrahams v. Young & Rubicam Inc.*, 79 F.3d 234, 237 n. 2 (2d Cir. 1996)); *see also Scott v. JPMorgan Chase & Co.*, No. 13 CIV. 646 KPF, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (collecting cases), *aff'd*, 603 F. App'x 33 (2d Cir. 2015). Here, by remaining silent, Petitioner has effectively acquiesced in dismissal of his due process claim as premature, to the extent he is considered to be detained under § 1231; and as without merit due to the absence of prejudice, to the extent he is considered to be detained under § 1226.

**C.   Count Three: Detention in Violation of the APA**

Petitioner argues that the BIA's decision in *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1110-11. 1113 (BIA 1999)[2] allocating the burden of proof at a bond hearing to the alien, rather than the Government, is arbitrary and capricious; that the BIA relied on the wrong regulation to justify its decision; and that *Adeniji* represents an unexplained rule change. Section § 1226(a) is silent on this issue, and the burden-of-proof question under § 1226(a) remains undecided in the Second Circuit at this time. District courts outside this Circuit have held that the BIA's decision in *Matter of Adeniji* is not arbitrary and capricious. *See Maldonado-Velasquez v. Moniz*, 274 F. Supp.3d 11, 12-13 & n. 1 (D. Mass. 2017) ("Maldonado-Velasquez's argument under the APA, [that though creative, fails. He concedes that § 1226(a) is silent as to the burden of proof. In general, the BIA is entitled to deference for reasonable interpretations of silences in the immigration laws, *see Soto-Hernandez v. Holder*, 729 F.3d 1, 3

---

[2]
    "From the outset, . . . the regulations under the IIRIRA have added as a requirement for ordinary bond determinations under section 236(a) of the Act that the alien must demonstrate that 'release would not pose a danger to property or persons,' even though section 236(a) does not explicitly contain such a requirement. . . .We deem the regulatory provision at 8 C.F.R. § 236.1(c)(8) (1999) to contain the appropriate test, as it is binding on us and pertains directly to removal proceedings under the IIRIRA. Consequently, to be eligible for bond, the respondent must demonstrate that his 'release would not pose a danger to property or persons, and that (he) is likely to appear for any future proceeding.'" *In Re Adeniji*, 22 I. & N. Dec. at 1113; *accord In Re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006) ("An alien in a custody determination under that section must establish to the satisfaction of the Immigration Judge and this Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.") (citation omitted).

(1st Cir. 2013), and there is nothing unreasonable about the BIA's interpretation of the burden of proof. . . .").

Petitioner, in his opposition memorandum of law, has failed to respond to The Government's arguments that his APA claims lack merit. Accordingly, the Court deems Petitioner to have waived his assertions of APA violations occasioned by the application of *Matter of Adeniji* to his bond hearing. *See Molinari v. Bloomberg*, 564 F.3d 587, 609 n. 15 (2d Cir. 2009) ("In short, [appellants] make no argument [in any of their appellate briefs] whatsoever regarding their claims under subdivisions (e) or (f) or New York City Charter § 38. Accordingly, such claims are deemed abandoned.") (citation omitted).

### D. The Requested Injunctive Relief Is Unavailable

Petitioner argues that any change in his place of confinement would be an abuse of the Attorney General's discretion and a violation of his Sixth Amendment right to counsel, if the transfer would remove him from the district in which his attorney is located. Respondent counters with several arguments as to why the Court lacks jurisdiction over this request and why it lacks merit, including that any decisions regarding the place of confinement for noncitizens subject to removal are within the Attorney General's discretion, and that the authority to transfer Petitioner to another facility rests with DHS. Resp't Mem. at 10 (citing 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii); *Calla-Collado v. Att'y Gen. of*

*the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (stating that Congress vested DHS "with authority to enforce the nation's immigration laws[,]" and that, as a "part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another'") (quotation and citation omitted).

The Court concludes that it does not have the authority to dictate to DHS where Petitioner should be housed. "The Attorney General is mandated to 'arrange for appropriate places of detention for aliens detained pending removal.'" *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (citing 8 U.S.C. § 1231(g)(1)). "The Attorney General's discretionary power to transfer aliens from one locale to another, as [he or] she deems appropriate, arises from this language." *Id.* (holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a *Bivens* class action suit") (citing *Rios–Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as § 1231(g); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); footnote and other citation omitted)). Petitioner's request for an injunctive relief accordingly is denied as beyond this Court's jurisdiction.

**V. Conclusion**

For the foregoing reasons, the Petition is dismissed with prejudice, except to the extent that Count Two can be interpreted as raising a due process claim under 8 U.S.C. § 1231 and *Zadvydas*, such claim is dismissed without prejudice as premature. No certificate of appealability shall issue. The Clerk of Court is directed to update the case caption pursuant to Rule 25(d) of the Federal Rules of Civil Procedure so as to reflect that William P. Barr has assumed the role of United States Attorney General, replacing Acting Attorney General Matthew Whitaker. In addition, the caption should be amended to reflect that the proper spelling of defendant Searls' first name is Jeffrey, not Jeffery. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: May 29, 2019
Rochester, New York.